May it please the Court. Jonathan Steiner, appearing on behalf of Plaintiff Appellants for the Insurance in this case. As Your Honors are aware, this matter is related to the Pan Pacific case in that Twin City is also the defendant in this case, as it was one of the defendants in the Pan Pacific case. Therefore, a lot of the same issues are involved. And I'd like to start off by answering one of the questions that was asked. Are there different lawyers in this case? Yes, there are different counsel in this case. They brought in reinforcements. I'd like to start off by answering a question that you asked of counsel for Pan Pacific in this case, which was, what do we do in an instance where a complaint alleges both that the officers and directors allegedly line their pockets, but it also alleges simple negligence or a complaint that alleges both a disgorgement remedy as well as a nondisgorgement remedy? And I would submit that in that case, you look to the policy, and what does the policy say? And I'd like to direct the Court's attention to the policy in this case. Oh, good. You're not going to read me from the middle of some case, are you? I am not. You're not going to actually look at the policy, the real policy? The real policy. I'd like to direct the Court's attention to the Appellee's Supplemental Excerpt to Record, Volume 2, under tab 33. Right. And a specific page of 33. The numbering here goes 33-something. Yes. And the policy, I believe, starts at 33-4. Yes. And I'd like to direct the Court's attention to 33-12. Okay. 33-12. At the top of 33-12, there's a Heading 7 allocation. And that heading addresses precisely the circumstance where a claim asserted is a mixed claim that asserts both restitutionary as well as nonrestitutionary damages, as well as a claim that asserts both negligent as well as intentional condoning. In fact, any claim that asserts both a covered and a noncovered claim. And it says if there's both a loss covered under this policy and a loss not covered under this policy are incurred. And then it goes on at the end to say that the insurer shall fairly and reasonably allocate such amount between a covered loss and a noncovered loss. And then it goes on to provide a provision whereby if the insured and the insurance company can't agree on an allocation, then there's either an arbitration or an adjudication. So the ---- Well, I'm aware, as I think we all are, about the allocation provision. I mean, there's nothing new here. The claim that at least the insurance made in the early case was that it's a unified, that the underlying complaint was presenting unified theory. And what you can do is if you sort of observe in the real world directors lining their own pockets by giving inadequate disclosures, you can plead little pieces of that. I mean, you can sort of plead the whole gestalt that, you know, they stole from us by selling the company for a song and lined their own pockets. But if you just take part of that behavior and say they made inadequate disclosure, I mean, they made inadequate disclosure could be part of the scheme to line their own pockets, but it's also a, just standing alone, it is a breach of fiduciary duty, right? Regardless of whether you managed to prove that they lined their pockets or whether they did it negligently or willfully or whatever. So you can take little portions of what is in total a restitution kind of claim and plead it as something else. What do you do with that? I think in that instance, then, when you get down to it, there would be a trial as to what portion of the claim is for restitution and what portion is not. But in this case, summary judgment was granted entirely based on the pleadings. And in that case, you've got to look at the evidence. So in the pleadings in this case or the pleading in the underlying case? There was no trial in the underlying case. There was no trial in the underlying case. How far did it get? I'm sorry. We had two cases very similar. I actually know the facts quite well, but I obviously got mixed up a little bit here between the two cases. Let me review the facts generally in this case. This case was not a merger case. In this case, it was alleged that Unified sold its subsidiary, Hawaiian Grocers, and it was alleged that the officer and directors who approved the merger on behalf of Hawaiian Grocers, Unified's subsidiary, it was alleged that they knew or should have known that this was a flawed transaction and that the company that was being sold, that the stock allegedly had no value and that the leveraged buyout, therefore, rendered the company that was sold insolvent. So it was alleged that they either knew or should have known that the sale rendered the company insolvent. That's the essential facts of the underlying complaint. As far as the procedural posture, at the time summary judgment was granted in this case, the underlying case was going on at the same time. After summary judgment was entered in this case, Unified and the plaintiffs, the bankruptcy trustee in the underlying case, reached a settlement. So that's the procedural posture of the case. Summary judgment was granted based on the district court's opinion that, viewing the pleadings, that the district court made a determination that even though, in our view, the pleadings alleged both negligence as well as intentional conduct, and even though, in our view, and in fact, the court found that the complaint sought a mixture of damages and restitution, but they found that all the damages were in the nature of restitution. And having found such a mixed claim, it's our position that the court erred in granting summary judgment in favor of Twin City and, in fact, erred in denying summary judgment as far as the duty to advance defense costs in our favor. So you essentially have to be... This is a complaint of... Go ahead, Judge Kuczynski. My question was that you essentially have to have a shadow trial here of what the underlying litigation, how it would have played out. Is that your position? Well, it depends. If there... The policy itself actually provides two exclusions that go to both of the issues in the case, both the 533, the intentional acts public policy that Twin City relied on, as well as the disclosure. And those are in the policy. There's one that provides that coverage is excluded if they, for based or in any way relating to their gaining, in fact, personal profit. And secondly, as far as the disgorgement, it says... I mean, as far as the willful conduct, it says that that conduct is excluded if there's a judgment or a final adjudication adversely insured that establishes this willful misconduct. So if you look at what Twin City promised, they promised to insure these conduct unless, as far as the willful misconduct, unless there's an adjudication in fact of willful misconduct. And as far as the disgorgement, they say, well, insure it unless it's related to gaining, in fact, any personal profit. So just from the policy alone, if you leave the public policy and the California statute aside, what they promised was to insure these two things until they're proven. In this case, it hasn't been proven. Now, in this case, we bifurcated. Judge Gould had a question. Why don't you just process that? Here's what I was going to ask by way of clarification. Am I correct that the complaint alleged not only wrongful causes of action like intentional wrong, like looting, but also this negligent breach of fiduciary duty you knew or should have known it wasn't a great deal? And then second, didn't the underlying complaint, I mean the Trustee Yee complaint, ask for restitutionary damage or ask for restitution, but also ask for damages and ask for punitive damages and that the amount of damages requested exceeded the amount that was taken out of the company allegedly by the defendants? They asked for damages to compensate all the creditors. To answer your question on both parts, first, as far as the negligent versus the intentional conduct, the complaint did in fact allege both an alleged scheme to take as much money as possible out of the company, but it also alleged that they knew or should have known that the transaction was fundamentally flawed. So it did allege a garden variety negligent claim for negligent breach of fiduciary duty. In fact, the complaint never alleges that they looted or stole from the company. Instead, it alleged that there was a plan to take as much money as possible out of the company. And we submit that if there was any proof that there was an intent to take money out that was not, that they were not entitled to, that in fact there was proof of any intent to strip assets, that that might not be covered. But in this case, there is no such proof. There are only allegations. And ----  What about the damages side of it versus restitution? Now, this settled, this dismissal occurred before the settlement, so the district court did not have any proceedings about what was settled. That's ---- In terms of the complaint, what did it ask for? The complaint, you're correct, the complaint asked for damages and the restitution, and it alleged that they were damaged to the tune of $13.5 million. And a fair read in the complaint, there's no way to add up $13.5 million that's even alleged to have gone into Unified's pockets, much less the officers' and directors' pockets. We put on evidence that showed that none of this money went into the directors' and officers' pockets. There's no allegation or any proof that any money went into the pockets of the officers' and directors'. Rather, there are some allegations that some of the money went into the coffers of Unified, unproven allocations. But the damages themselves, the $13.5 million, are based upon the claims of the creditors in the bankruptcy. So you are correct that, yes. And in fact, the district court even found that. In its order on our motion for reconsideration, the district court found that there's a mixture of damages and restitution sought, and they also found that it was uncertain as to how much will be proven to have gone to Unified and how much will be proven to have gone otherwise. I'm sorry. As a practical matter, in the sort of underlying litigation, I mean, this is not an uncommon event. And it almost never ends in a trial, as I understand it. These almost always end in settlement. And you can be sure that the settlement was structured in such a way as to maximize insurance coverage, right? Actually, in fact, the settlement in this case, there were two different cases. I'm not saying anything about the settlement in this case. We have to think about the future and the effect of any ruling we make. And if the officers at the company are well advised, they will, you know, if we adopt your theory, they will say, well, we'll certainly never sign a settlement that says we stole from the company. The word restitution will never reach that page. There'll never be an admission of intentional wrongdoing. But we will cheerfully agree that we were very negligent. I mean, just really careless and maybe stupid. You know, stupid is fine. We don't mind. And as a result of that, we're paying X amount of dollars for that. And, of course, that will always be, you know, if the counsel have any competence at all, they will keep an eye out for insurance coverage and structure it that way. Quite aside from the fact that they would never want to agree to a settlement that tarnishes the reputation of the client by calling them, by admitting essentially to having committed fraud. How does an insurance company protect itself against something like that? I mean, an insurance company gets this package, nicely tied up with a bow, and says, okay, now pay me. Well, in this case, they didn't get the package that way. In this case, when the claims were alleged, we submitted the claim, and it was clear that the claim alleged a mixture of remedies. What did Twin City do? They denied coverage, and they reserved their rights. If they hadn't denied coverage, if they'd stepped up to the plate and said, okay, there's potentially coverage here, and we want to talk about allocation of defense costs, then they'd have certain rights. And one of those is found in the insurance policy. It talks about claims expenses, settlement, and cooperation. And this is at 33-7. It says the insurer shall have the right to associate itself with the defense and settlement of any claim that appears reasonably likely to involve the policy. And it also has a provision that the insurer has the right to consent. And, in fact, it potentially could void coverage if the insurer wasn't given the right to consent to settlement. So this is not – it's not a situation where the insurer could simply go out, have these claims alleged against it, say, well, as long as there's negligence claim, I'm covered. I'm going to settle it and allocate it all to insurance. As long as the insurance company steps up to the plate and does what it's supposed to, then it's protected. And even in this case, the question is, what do we do in this case? The underlying case is settled. As a practical matter, well, we will have arguments below that they've waived the rights to allocate. But, you know, I'm sure Twin City will argue that under paragraph 7, they've got a right now to go in and prove that, in fact, the settlement, part of it was disgorgement, part of it was for willful acts. But we haven't gotten there yet because the district court found as a matter of law that all these claims were not covered. You're pretty much out of time. Unless there are questions, we'll give you a couple of minutes for rebuttal. Thank you, Your Honor. We'll hear from the insurance company. May it please the Court. Kim West and my colleague, Samantha Ball, on behalf of the Apelli Twin City Fire Insurance Company. Your Honor, before I begin, I was wondering, do you feel that the choice of law issue needs to be addressed? Not for me. No, I don't think so. I'd rather get right to it. And, you know, my question for you is simply this. I've read the complaint. It seems like many such complaints, as Judge Kaczynski's noted in several cases, to allege, you know, both covered claims and uncovered claims, literally at least. It's got negligence or breach of fiduciary duty claims that aren't the intentional wrongful conduct type, I think, with that known and should have known language. So at least it seems on its face to have some claims that might be covered. And then it also appears to ask for damages beyond the amount of property taken by Unified. So how can the whole thing, putting aside what might be proven or negotiated as to what the settlement was for, how can the complaint, how can the whole coverage be dismissed at the stage the district court dismissed it? Well, we're pleased to go through the allegations because we think, in light of California insurance, that this is a case where principles of uninsurable loss and uninsurable willful acts merge to preclude coverage. And in particular, we think when you go through the allegations of the complaint and relevant case law pertaining to California Insurance Code, Section 533, it doesn't matter what the nature of the counts are, that all the conduct that's alleged here is willful conduct, is pervasive. All the allegations in the background section of the case are incorporated by reference in each count of the pleading that's at issue here, and that where the conduct alleged is inseparably intentional, and that comes from the Coit Grapery case, that it doesn't matter what label you put on the allegations. And I'd like to go through the allegations in the complaint, which we believe establish that this conduct is willful within the purpose of, within the scope of Section 533. The, according to Downey Ventures, 66 CalNet 478, 1998, Insurance Code Section 533 precludes insurance coverage for a willful act. As the court said, Section 533 reflects a fundamental policy to deny insurance coverage for willful wrongs. The third amendment complaint at issue here is replete with allegations of willful conduct. And where are you reading from? The third, that is Excerpt of Record 32. I have 32 here. Before I begin, Your Honor, may I define what I mean by willful conduct? I think it's critical. Okay. The, I'm using the Downey Venture definition of willful conduct, which is an act deliberately done for the express purpose of causing damage or intentionally performed with knowledge that damage is highly probable or substantially certain to result. Okay. And in the Shell Oil Company versus Wintager Insurance Company case, 12 CalNet 4th, 715, 1993, the court also recognized in determining whether this willful acts within the Now I'm going to start off by addressing the motive for the transactions at issue. The motive for these transactions at issue are established at Paragraphs 24 through 27. That's on Excerpt of Record 32-7. Those allegations, 24 through 27, describe the precarious financial condition of HDS. Paragraph 28 is critical. It alleges that defendants certified through grocery specialty embarked on a series of transactions to take as much money as possible out of HDS before it collapsed. This allegation alone establishes a preconceived design to loot HDS. Then throughout the complaint, the complaint uses terms such as I'm sorry. I don't know what that sentence you just said meant. This is an allegation in a complaint. I'm not sure how an allegation can establish something. You just used a word that was the word allegation established. It's a concept that doesn't work for me in real life. How can something that's alleged establish anything at all? That is the allegation. What we're saying is that based on the allegations of this complaint, under this theory of the case being asserted by this trustee, there can be no coverage for this particular LBO because the conduct alleged is willful in nature. Okay. What you've done is you've picked one allegation out of a very long complaint that charges willful conduct. And are you telling me that if I go through and look through the rest of this complaint, I'm not going to find a claim that there was negligence? No. You will see the word negligent used in the complaint. Can I just ask my questions and then you can? Oh, I thought you were. Will I find negligence? You will find references to negligent or negligently or new or should have been. And things that charge less than willful conduct. Will I find those things as well? Why don't those things define the complaint? Why pick this allegation as being the defining allegation of the complaint somehow? If that's only one allegation, I'd like to refer to more allegations which we believe show that the trustee is pleading willful conduct. I guess I'm trying to understand your methodology. Unless these are the only allegations. I mean, you have heard of pleading the alternative. You know what that means, right? Yes. You went to law school in the last 30 years or so, right? Yes. So let's not count how many, but. I think we lost the school. I think we lost Judge Gould. Oh, I'm here. Can you hear me? We lost the video from Judge Gould. Can you see us? Oh, all right. I don't know why you lost the video, but I will just assure you I'm still here. I can see all of you. Maybe we should just go on. Maybe the deputy attorney can work on the technical aspects of it. If Judge Gould, if you make small noises. If I have any questions, I'll be quite distinct. If you make small noises along the way, we'll know you're still there because we can't see you. But anyway, you picked this. As you know, complaints often, and I think that's a question I heard Judge Gould ask you, often complaints plead an alternative, plead different theories, and sometimes, of course, they always include the claim that these are evil people who did things maliciously to line their own pockets, but very often they claim things that are much less than that. And I don't know why you picked this one allegation as being the defining allegation of the complaint. And I would like for you to allow me to go through more allegations of the complaint because our point is this. California Insurance Code Section 533 is based on the nature of the conduct, not the nature of the causes of action that are asserted. And all of what we contend to be willful acts that I would like to go through are incorporated by reference in all of the relevant counts. And the district court held in the order on the motion for reconsideration that the conduct was exclusively willful and deliberate based on her review of the allegations. Now, in the Coit-Drapery case, the Coit-Drapery case, which is 14, 4, 15, 27, stands for the proposition that the willful conduct permeates each count. It doesn't matter that there are mixed counts. In Coit, the court addressed the issue of Insurance Code Section 533 in the matter involving uninsurable conduct where the insurer alleged that negligence also was involved. According to Coit, Section 533 must be interpreted so as to give effect and meaning to all of its provisions. As the court said, quote, just as we cannot allow insurers to recharacterize negligent conduct as intentional, we cannot allow the insurer to recast intentional conduct as merely negligent. And Coit also holds that where the conduct is inseparably intentional, it doesn't matter that there are mixed counts. This is also consistent with the opinion we cited in our brief, Steadfast v. Caremark, 835 Northeast 2nd, 890, where the court said that the conducted issue was the paradigm of intentional conduct and the antithesis of negligent behavior. And if you will permit me, I would like to go through some other allegations because they're critical to our argument. Once again, the complaint uses the term scheme, conduit, plan, and devices. I recognize that those can have different meanings, but we submit in the overall context, which we're going to establish, that this is in the context of a willful scheme. Paragraphs 34 through 36, which are on pages 32 to 32-8 of the excerpt of record, refer or allege the false endorsement and false completion of articles of incorporation. Now, these were the very documents that were necessary to effectuate the transactions at issue. And then paragraph 1 of the… How does that help you? If it's a fraudulent scheme and they're phoning up the documents and doctoring the documents, that's an allegation of a phony scheme. And then there's actually paragraph 107, if I may, Your Honor, specifically alleges… But that's not restitutionary. Pardon? That's not necessarily restitutionary. I mean, let's say, in fact, they phoned up the documents because they were evil people. That's one of our arguments, that 533 is our evil people argument, and then we also have the Bank of the West Level III uninsurable loss argument as well. And as I stated previously, this is a case where both concepts merge to preclude coverage. I mentioned on paragraph 107 on 32-21, that actually, that is crystal clear. The scheme by Certified was intended to mislead others who would rely upon the creditworthiness of HDS and be left unpaid after RHL and Certified drained the remaining assets out of the company for their own benefit. And if you turn to paragraph 118, this is at 32-23, this alleges a concealment. It alleges a fraudulent and intentional concealment of these wrongful acts. In plain English, at this section, it alleges there was a cover-up. There's also allegation of paragraph 118, subpart 5, that this concealment was done to prevent or to delay the assertion of any claims against defendants. That's an allegation that they were trying to get away with something. All of these paragraphs that I've referred to indicate that the trustee is alleging that from the creation of the scheme through its execution, then through the intent to mislead the new creditors, the new money creditors, and then through the cover-up, that he's seeking to recover based on a theory of acts intentionally performed with knowledge that was highly probable or substantially certain to result. And that's the type of ongoing that falls within the insurance code section 533. What do you do about the negligence allegations? Well, once again, we think that falls within the court-draper analysis, that when you have willful conduct that falls within the scope of 533 pervading each and every count, it doesn't See, these are allegations. They claim willful conduct. Plaintiffs often over-claim. They will make all sorts of claims. And in the end, what they really want is money. And they're perfectly happy to establish that it was just negligence. Even if they believe it was negligence, they claim some evil intent. But this, then, why did he take, why didn't he, that's actually a very significant one. This is the third amendment complaint. It's the fourth version. He had every opportunity to water this complaint down and not use this language he used. Why would he want to water it down? Because why would he want to go to court to try to prove a case based on the highest possible mental state? I asked you a question first. Okay. So you came back, cut off my question in the middle, you asked me a question. So you answer my question, I'll answer your question. Would you repeat it, please? Ah, you didn't pay attention. You don't remember the question? He said did he allege negligence as well. I think that's the essence of the question. What do you do about the negligence claims? Well, and that falls once again with our analysis and our argument that Coit Drapery addresses that, that where the willful conduct pervades all causes of action, that 533 precludes coverage no matter what the counts are alleged. 533 is a conduct exclusion. It's not dependent on the nature of the relief asserted. And Coit Drapery ---- Okay. Let's look at Coit Drapery. What exactly in Coit Drapery are your lines? Okay. On page 12 of the opinion. What does it say? Now, I'm going to be the first to admit Coit Drapery involves a situation involving allegations of sexual harassment, molestation. But that involves a situation where the willfulness depends on conduct ---- You may be the first to admit it, but you were the quickest to admit it. You kept citing Coit Drapery as if it were directly avoided. No, but there's two ---- There's two ways that something can be willful. What did Coit Drapery rely on? Okay. My point is that Coit dealt with the willfulness situation where the conduct was inherently willful. We're talking about the other prong where it can be willful conduct. Okay. I'm waiting. Under the head notes 12. I don't read head notes. On page 12. I don't read head notes. On page 12. Okay. I think it's probably on page 1609 of the official reporter. For instance, if in the course of inseparably intentional sexual molestation or harassment of the victim, the wrongdoer so negligently behaved as to cause the victim additional physical or emotional harm, there is no duty to defend, even though mere negligence not occurring during an inseparable course of intentional conduct might theoretically be covered. And then on over to ---- Well, so long you have dug your hole even deeper. What it says is if you've got intentional conduct, the fact that you are, after being intentional, you also commit negligence doesn't make it negligence. I don't know how that helps in answering the question I've been asking, and I think Judge Gould asked, is what happens when you've got allegations of the same conduct, both as intentional and negligent? That doesn't help you any. No, there are allegations in this case of negligence as well. There were allegations in court of derogatory negligence. And as the court went on to say, in the present case, the conduct of the defendants was inseparably intentional. All of this ---- Let me ask, if you can hear me now, let me ask this question. Thanks. You know, that word inseparably is important, and I'm not sure what it means in the context of the complaint here, which may be read to make alternative contentions. So, for example, you know, if I read the complaint to say that an intent to loot the company is at the heart of all the allegations, then you've got something for your argument. But if I read it to make alternative contentions, maybe they were negligent, or we contend they were intentionally wrongful, we contend they had a conflict of interest, we contend they were negligent. Why can't the plaintiff recover if they prove only that there was a conflict of interest? Why wouldn't there be coverage if they didn't prove any intentional wrongful conduct occurred? Because they would not be entitled to indemnity coverage in this context where the allegations of the complaint, regardless of the counts, are premised on conduct that falls within the scope of 533. And we're here today. Is there any authority that says that in a complaint like this, the allegations of wrongful conduct are inseparable from the allegations of mere breach of duty of care or acting with a conflict of interest? I'm certain there's no case squarely on point with this sort of fact pattern. But I'd like also to analyze the case... Wait, wait, wait. Do you cite court type in your brief? No, we did not, Your Honor. Is it a recently decided case? No, it's not. Did you provide a 28-J letter? Did you provide a copy of the case to opposing counsel, to the court? You come to argument, citing cases, relying heavily on cases you haven't cited in your brief? Well, we didn't cite... How are we to be prepared to deal with these cases? Well, we did cite 533 extensively in our brief and talked about the nature of the conduct. And we did cite a number of cases on this principle, including the McAlean case and other cases. I understand. Yes. But you come to court and you expect to rely on a case, which you read from a... And you, you know, I didn't... I know Coy Drapery from my prior encounters with California law. But my memory of it is quite vague. And I was surprised because I thought I had looked at the cases mainly cited in your brief. And I looked at it in the table of contents. I see it's not here. Do you understand the obligation that before you discuss a case, I mean, it's supposed to be in your brief. And if you for some reason missed it, to provide advance notice to opposing counsel in the court, preferably with copies, do you understand that obligation, counsel? I did not appreciate that obligation. I thought Rule 28 applied to new cases subsequent to the time of briefing. Well, you're not supposed to provide us old cases at all. Yes. But do you understand how you have everyone here as a disadvantage when you start citing cases that you haven't previously referred to? I apologize for that. It would have been at least courteous, if nothing else, for you to give advance notice to opposing counsel. I mean, I don't know if opposing counsel would care to discuss the case if you haven't discussed it before. My intent is no discourtesy. I assure you of that. And how am I supposed to know whether what you're reading in the case is accurate or fair if I don't know this is a case you're going to rely on? Understand. Once again, I apologize for that. Well, it's at the very least ineffective for counsel to do this, because insofar as you're trying to help your client by relying on a case, you don't do yourself a favor of standing there and reading snippets from it when none of the rest of us had a fair chance to consider it ahead of time. Okay, Senator. You understand that? I do. Sorry. May I address the coverage argument from another perspective? We have this entity-only lawsuit out there, which is at the excerpt of Record 35. And the coverage issues also should be analyzed through the prism of the entity-only lawsuit. I'm sorry. It's at what? Excerpt of Record 35. You know, you have tabs. When you say 35, you mean tab 35? 35-1 is where the entity-only lawsuit commences. Okay. 35-1 is a caption. Yes. Okay. What are you reading from? What page? Okay. Well, if you look at the allegations commencing on paragraphs on pages 35 through 4 through 35. What are we looking at? What is the document you're asking us to look at? The Fourth Amendment complaint and the entity litigation filed by Mark Yee against Unified Western Grocers, et al. Okay. Okay. If you look at the allegations, the substantive allegations commencing on pages 35-4 through 35-24 ending at line 127, you will see that those allegations. That's a lot of pages for me to look at. Right. But they mirror the other point is they mirror the allegations. Do you want to make this, I mean, to look at right here where you're standing here? Is there something particularly you want to focus on here? Well, overall, those allegations, the point is those allegations mirror the allegations in the Third Amendment complaint and the individual action against the individual defendants. And count one of the, on page 35-24, alleges a preferential transfer. Paragraphs 129 and 130 contend that certified received preference payments totaling $5.16 million and the trustee seeking the return of that money pursuant to 11 U.S.C. Section 550, which allows the trustee to recover the property transferred. By definition, any exposure under the preference count would be uninsurable pursuant to Bank of the West because the return of such sums would result in the return of ill-gotten gain. Then count two, on 35-25, is for fraudulent transfer. And at paragraph... Excuse me, counsel. Yes. You just suggested, which may be correct, just it's a new principle for me. So I'm going to inquire that any return of funds pursuant to a bankruptcy court preference action would be considered ill-gotten gains within the meaning of the California common law exclusion. Is there any case that says that? Because my recollection of preference law is that it at times can involve intentionally wrongful taking of something, but at other times it's rather technical, has to do with the timing, could involve the timing of a legitimate payment. And that's my understanding as well. When I use ill-gotten gain there, I'm not implying that there's any mental state component to a preference claim. Is there any case that says that comes automatically within that California exclusion? Not in the context of a preference claim per se, but we believe that the principles of the Bank of the West say that if you have to return something that you're not entitled to, which is the essence of a preference claim, that you cannot obtain insurance coverage for that or result in a windfall. Okay, thanks. On counts two and three, if you go to excerpt of record 35-152, and this is the fraudulent conveyance claim. In the paragraph 152, the trustee specifically alleges an intent to defraud. And in the context of an LBO, there's some authorities that say that you can only maintain a fraudulent conveyance claim if there's an actual intent to defraud. So if you look at the, there's two buckets of money involved here. You've got the money that supposedly went out to the unified entities and individuals. That is asserted in the context of a preference claim. So if they have to pay that money back, that can't be covered, because that falls within the scope of uninsurable loss. And the other bucket of money, whatever you call it, but I think earlier you referred to possible damages to the creditors. The damages to the creditors is in the nature of this fraudulent conveyance claim. And the fraudulent conveyance claim in the context of an LBO requires an intent to defraud, and that falls within the scope of Section 533. So what we're saying, if 533 doesn't preclude coverage for everything, if you break this out into its component parts, the bucket of money attributable to the preference claim, that's a disgorgement amount that can't be covered under the Bank of the West, and any recovery available with respect to the fraudulent conveyance claims can't be covered under 533, because by definition that involves an intent to defraud creditors. So what happens if they go to trial on these things and they find, nope, there was no fraud, there was no intentional misconduct of any sort, there was a little bit of negligence, and so they try the case and the jury comes back quite clearly ruling that all these allegations of intentional misconduct and lining of the pockets were unwarranted, but the directors should have been less, more careful, less sort of gullible. Yes. What happens then? So it turns out that all these claims, they all claim horrible things, as plaintiffs often do, but it turns out they evaporate under the light. In this situation... There's no more coverage, right? That's correct, because there could be no indemnity coverage, because the coverage will be determined based on the allegations and the theories presented by... Even though in the end the recovery is for negligence, there's a small recovery for negligence, that's not covered either. Not for indemnity purposes if the underlying theories involve willful acts or uninsurable loss. And what if they say, we believe this was uninformational, believe this was willful, but at the very least they're negligent. Let's say the complaint is structured that way. What we think it was either willful, they either knew what they were doing, they were either evil people out to line their own pockets, or at the very least they were fools and knaves. And they say, we don't know, we're the plaintiff, we want to do our own discovery, and we seek to... We know one of those things must be true, but we don't know which one. That's what the complaint says. I would say, if I understand your question correctly, I think... I'm happy to repeat my question. No, I think in that scenario that you could not just decline coverage. It's similar to a 10b-5 case. You could? Could not. You could not just decline indemnity coverage, given the premise that you've asked. It's similar to a 10b-5 case. So if I understand what your answer is, it depends a lot on how the plaintiff chooses to frame the complaint. If you can sort of characterize and frame the complaint so that the allegations permeate the entire complaint, then there's no coverage. If they say, gee, we're not sure, we think it was fraud, but it could have been negligence, we're pleading an alternative, then there is coverage. That's your position, that the way the plaintiff chooses to frame the complaint is really what determines it. In this sense, it's what determines it. It's not just a question of the causes of action that are asserted. It's also a question of the underlying facts. If the underlying facts show willful conduct, the fact that you might... We don't know at the complaint stage what the underlying facts show. That's why I gave you the question earlier, what happens if you get to the end and you have the underlying facts and you know they claim these things and they were totally wrong. They say there was willfulness conduct and the jury laughs at them and they say, no, no, there was nothing like it. They were just stupid. It would be wonderful for the defense. If the only theory of the case is the willfulness theory and they go into court and defense the case based on showing that it was a worse negligence, then that would be obviously a great result for the defense of the case itself, but that doesn't make the allegations of the complaint and the theory of the complaint asserted by the trustee a covered claim. So even if there's no misconduct, it's established at the end there was never any misconduct. They never lined their pockets. They never did anything willful. In fact, what they did was they were a little bit careless. Too bad because they found some plaintiff was willing to spit on a piece of paper and make allegations that are outrageous and false, essentially unsubstantiated. Too bad. We're not insured for that. That would be our position if the complaint is exclusively deliberate and willful. I think when people buy these policies, I don't think that's what they expect is my guess. If you really want to say that, you should really make it much clearer in your policies. You might win this case or not, but at least I think that when people buy insurance, they buy insurance against the risk that people will falsely accuse them of things and sometimes falsely accuse them of some very bad things, and they need a lawyer to defend them. But in California, insurance code section 533 is considered to be part of the policy itself. It forms part of the policy. I understand. Okay. Thank you. Do you want to take a couple of minutes for rebuttal? I'd just like to point out a couple of things. They, as you so aptly noticed, they picked a few allegations in the complaint. They've ignored the ones for negligence. And if you do what they say. Why don't you do your own picking while you are standing up? Do you have things you want to point to? Well, I think paragraph 144 alleged that they knew or should have known. So are we now still looking at tab 35? We're looking. The opposing counsel heard me, too, went through two complaints, a third and a fourth amendment complaint, I think. The third amendment complaint is the one that you're talking about. Okay. And that's at tab three. Okay. Tab three. I'm looking. I'm sorry. Not tab three. Tab six. Okay. 6-25. 6-25. Okay. It says, At the time the defendant officers and directors took the above-described actions, they knew or should have known that these actions were improper and a breach of their respective duties as employees, officers, and directors or fiduciaries and then goes on in paragraph 147 to allege that implementing the above actions approximately caused the irreversible insolvency of HGS to begin and then to accelerate into some $13.5 million in losses. And there are other allegations, but I don't want to spend my entire time pointing out allegations. We've pointed them out in our brief. There's a number of allegations that go towards negligence. If you look at the Lippe case, which is a Ninth Circuit case applying Hawaii law, and this was a Hawaii case where Hawaii law has to apply to the underlying case, it found that in a leveraged buyout, the officers and directors are potentially liable if they knew or should have known, should have known, negligence, that the transaction rendered the company insolvent. And that's really what was at issue in the underlying case. I was involved in the underlying case, and that was what really was at issue. And the fact that the plaintiff described this in terms of a scheme to suck as much money out as possible and to funnel money out doesn't change the fact that the underlying allegation and the facts of the underlying allegations are merely that these people did not recognize that this action, that the leveraged buyout potentially rendered it insolvent. And that's, it's a case of, you know, possibly simple carelessness. And these are actually, just like with the merger, it's very complex to determine whether a transaction is going to render a company insolvent or not. So under these facts, we think it clearly alleges negligence. The Lippe case says that negligence is enough. And we're not claiming that there's not intentional conduct here. But under the Gray case, under the Akata case and the Gan case, where you've got a duty to advance defense costs, the test is whether there is the potential for a covered claim. Here, there is the potential for a covered claim based on these acts. On that basis alone, you have to reverse the grant of summary judgment in favor of Twin City. And we would contend also grant summary judgment in our favor as to the defense costs. Thank you. Thank you. All right. Case is signed. We are adjourned. All rise. The court for this session stands adjourned.
judges: Kozinski, Gould. Martinez